J-S28037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY JERMAINE JENNINGS | : | |
| | : | |
| Appellant | : | No. 254 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 1, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000617-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY JERMAINE JENNINGS | : | |
| | : | |
| Appellant | : | No. 255 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 1, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000780-2023

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 15, 2025**

Appellant, Jerry Jermaine Jennings, appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas, following his jury trial convictions for two counts of delivery of a controlled substance, and one count each of possession with intent to deliver a controlled substance

("PWID"), simple possession, and criminal use of a communication facility.[1] We affirm.

The relevant facts and procedural history of this case are as follows. In 2023, Detective Tyson Havens, a member of the Lycoming County Narcotics Enforcement Unit, began investigating a crack cocaine distribution ring in Williamsport. At the time, the target of the investigation was Sam Harris, also known as "Boo." (N.T. Trial, 7/29/24, at 18). On May 3, 2023, Detective Havens utilized a confidential informant ("CI") to make a controlled purchase of crack cocaine from Mr. Harris. Detective Havens gave the CI $300.00, because she had previously purchased $150.00 worth of cocaine from Mr. Harris and he had been holding the CI's phone as collateral. The $300.00 would thus complete the prior transaction and serve to facilitate a new transaction.

Detective Havens conducted surveillance of the CI both by an electronic surveillance device, and in his car. He followed the CI to a location she arranged on the phone with Mr. Harris. When the CI returned with three bags of crack cocaine, she stated that she had bought the drugs from a black male that she did not know. After examining the electronic surveillance, Detective Havens determined that the man who had sold the CI drugs was Appellant, whom he recognized and knew as "J-Rock," and that the CI had been communicating with Mr. Harris using Appellant's cell phone speaker.

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and 18 Pa.C.S.A. § 7512(a), respectively.

- 2 -

Detective Jonathan Rachael, employed by the Lycoming County District Attorney's Office Narcotics Enforcement Unit, also conducted surveillance on the controlled buy. He observed the CI get into a white Honda Civic that was waiting in the pre-arranged alley. As he left his surveillance position to follow the car, Detective Rachael temporarily lost sight of it. However, Detective Rachael eventually located the white Civic at the housing complex at 2500 Federal Avenue in Newberry Estates, parked in front of Apartment 351.

During this time, Detective Robert Anderson was arranging a second controlled buy using his own CI. Detective Anderson asked his CI to reach out to Mr. Harris to arrange a purchase of crack cocaine. Wearing an electronic surveillance device and hidden camera, the CI contacted Mr. Harris, who instructed her to go to a specific meeting spot. Detective Rachael was informed by his colleagues that a second controlled buy had been arranged. Shortly thereafter, Detective Rachael observed a woman he did not recognize[2] and Appellant emerge from the area of Apartment 351, enter the white Honda Civic, and drive west out of his line of sight.

Approximately one hour after the first purchase, Detective Anderson transported his CI to a parking lot not far from the agreed-upon location, and she walked the rest of the way to a white Honda Civic to conduct the drug transaction. Detective Havens also conducted surveillance of this buy. He observed Detective Anderson's CI get into a white Honda Civic, driven by a

---

[2] She was later identified as Ashton Harden.

black male, and heard her say, "You're not Boo." (**See id.** at 34). Detective Havens also captured surveillance video, which showed the driver of the car wearing a distinctive rear-facing SpongeBob SquarePants ball cap and distinctive denim jacket. After the transaction, the CI returned to Detective Anderson with a Newport cigarette pack containing two knotted-off plastic bags of crack cocaine. Subsequently, Detective Anderson applied for and obtained a search warrant for Apartment 351 on the 2500 block of Federal Avenue in Newberry Estates, where law enforcement believed Appellant to be staying at the time.

On May 4, 2023, detectives executed the search warrant. The apartment was leased by Kitty Lucas, a girlfriend of Sam Harris. Detective Havens located Appellant in a bedroom with Ashton Harden. Detective Havens found identification belonging to Appellant, a bag of psilocybin mushrooms next to Appellant's wallet, a bag of multi-colored pills later identified as methamphetamine, and a grocery bag containing a Tylenol bottle holding nine individually wrapped bags of crack cocaine. The bags were consistent with the packaging used in both controlled buys. Additionally, the detectives recovered multiple cell phones from the home, as well as the SpongeBob SquarePants cap and denim jacket. The white Honda Civic, rented by Sam Harris, was located near the residence.

Subsequent to Appellant's arrest, the Commonwealth charged him with drug offenses at two separate dockets, No. 617-2023 and No. 780-2023. Docket No. 617-2023 related to the controlled buys, and docket No. 780-2023

related to the drugs discovered at the apartment following execution of the warrant. On August 22, 2023, the Commonwealth sought to consolidate the cases. On September 26, 2023, the trial court granted the motion.

On July 29, 2024, the case proceeded to jury trial. At trial, both CIs identified Appellant in court as the man who had sold them crack cocaine. Further, Detective Anderson's CI testified that she knew and recognized Appellant but did not know his name—she had previously referred to him as "Keith." (N.T. Trial, 7/29/24, at 113). Following trial, the jury convicted Appellant of the aforementioned charges. On October 1, 2024, the court sentenced Appellant to an aggregate term of 5 to 20 years' incarceration.

On October 8, 2024, Appellant timely filed a post-sentence motion, challenging the sufficiency and weight of the evidence and the discretionary aspects of sentencing. The court heard argument on the motion on December 17, 2024.[3] On February 4, 2025, the court entered an opinion and order denying the post-sentence motion.

On February 24, 2025, Appellant timely filed separate notices of appeal at each docket. On February 25, 2025, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. On March 5, 2025, Appellant timely complied. On May 23, 2025, this Court

_____

[3] At the hearing, counsel stated that the sufficiency and weight arguments went primarily to "possession with intent to deliver offense that was under [docket No. 617-2023]." (N.T. Hearing, 12/17/24, at 2).

consolidated Appellant's appeals *sua sponte*.[4]

On appeal, Appellant raises the following issues, which we have combined and reordered for purposes of analysis:

> Did the Commonwealth present insufficient evidence to support a finding of guilt beyond a reasonable doubt to possession with intent to deliver cocaine; specifically, that Appellant possessed the cocaine, where he was not the lessee of the apartment?
>
> Was the Commonwealth's evidence at trial insufficient to prove elements of criminal use of a communication facility when Appellant did not organize the sale of cocaine?
>
> Did the trial court abuse its discretion when imposing an aggregate sentence of five (5) to twenty (20) years in a state correctional institution when, at best, Appellant was the middleman and there was a failure to weigh adjustment factors?

(Appellant's Brief, No. 254 MDA 2025, at 12; Appellant's Brief, No. 255 MDA 2025, at 8).

Appellant's first two issues concern the sufficiency of the evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the

---

[4] Prior to consolidation, Appellant had already filed separate briefs at each appellate docket number.

Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In Appellant's first issue, he argues that the Commonwealth presented insufficient evidence to sustain his conviction for PWID–cocaine related to the drugs discovered in the apartment. Appellant claims the Commonwealth could not prove Appellant's possession of the cocaine where police recovered the cocaine during the execution of a search warrant in an apartment where Appellant was not the lessee, relying on *Commonwealth v. Rodriguez*, 618 A.2d 1007 (Pa.Super. 1993). Further, Appellant insists that evidence of the drug deliveries the previous day did not prove Appellant had the ability to control the cocaine seized in the residence. Appellant concludes the evidence was insufficient to sustain his PWID-cocaine conviction on this basis, and this

Court must grant relief.  We disagree.

The Controlled Substance, Drug, Device and Cosmetic Act provides:

**§ 780-113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are prohibited:

\*   \*   \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).  Thus, to sustain a conviction for PWID, the Commonwealth must prove: (1) that the defendant possessed or constructively possessed a controlled substance; (2) with the intent to manufacture, distribute, or deliver it.  *Commonwealth v. Brown*, 48 A.3d 426, 42 (Pa.Super. 2012).  "[P]ossession with intent to deliver can be inferred from the quantity of drugs" possessed by the defendant.  *Commonwealth v. Little*, 879 A.2d 293, 298 (Pa.Super. 2005), *appeal denied*, 586 Pa. 724, 890 A.2d 1057 (2005).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession[.]" *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005) (quoting *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa.Super. 2005)).  "Constructive possession is the ability to exercise conscious control or dominion over the illegal [item] and

the intent to exercise that control." ***Id.*** "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Id.*** "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the trial court observed:

> When the detectives of the [Narcotics Enforcement Unit] searched Apartment 351 in Newberry Estates, in the west bedroom they found [Appellant] and the white female who was with him during the delivery to [the CI], Ashton Harden, who was believed to be [Appellant's] friend or girlfriend. On the nightstand in that bedroom along with [Appellant's] wallet, credit cards and IDs, there was a bag of psilocybin mushrooms. At the foot of the bed, they found a ShopRite bag inside of which was a Tylenol bottle containing nine knotted baggies of cocaine, a tied-off bag containing multicolored tablets, and documents with [Appellant's] name and address on them. The parties stipulated to the lab reports. Commonwealth's Exhibit 18, which contained the results for the substances found during the search of the apartment that were introduced through the testimony of Detective Anderson, showed that the substance in the nine knotted baggies was [cocaine,], the mushrooms [contained psilocybin], and the multicolored pills contained methamphetamine. Materials containing psilocybin and/or

psilocybin are Schedule I controlled substances.

\* \* \*

Detective Havens testified that the bags of crack cocaine were packaged in the knotted bags, which was the same way that the three bags of cocaine that he delivered to [the CI] and she provided to [Detective] Havens the day before were packaged. [Detective] Havens also noted that no items to ingest the cocaine were located during the search. [Detective] Havens also testified as an expert that [Appellant] possessed the nine baggies of cocaine with the intent to deliver it. He noted that the cocaine was packaged in nine individual bags, it was the same packaging as the deliveries the day before, a user would get a better deal buying a single bulk bag of cocaine rather than nine individual bags, and [Appellant] possessed two cell phones, which was typical as many dealers possess one cell phone as their personal phone and a second cell phone for "work."

When this evidence, and the inferences deducible from the evidence, are viewed in the light most favorable to the Commonwealth as the verdict winner, it is sufficient to show that [Appellant] possessed the cocaine, psilocybin mushrooms and methamphetamine tablets and that he possessed the cocaine with the intent to distribute it.

The court rejects [Appellant's] claim that the evidence was insufficient because he was not the lessee and the lessee was the friend or girlfriend of [Mr.] Harris. Although Kitty Lucas may have been the friend or girlfriend of [Mr.] Harris and lessee of the apartment, her belongings (including letters from [Mr.] Harris and a photograph of [the two]) were in the east bedroom. None of the drugs were found in the east bedroom; they were all found in the west bedroom where [Appellant] and Ashton Harden were located at the time of the search and they were with [Appellant's] papers and effects. Therefore, despite the fact that [Ms.] Lucas was the lessee and she was the friend or girlfriend of [Mr.] Harris, the evidence was sufficient to show that [Appellant] possessed the drugs found in the west bedroom.

(Trial Court Opinion, 2/4/25, at 20-22) (internal citations and footnotes

omitted).

We agree with the trial court's analysis. Initially, we note that Appellant's reliance on **Rodriguez, supra** is misplaced. In **Rodriguez**, the appellant was arrested after police entered an apartment and discovered the appellant in an open closet; in the closet, police recovered a jacket that had three baggies of cocaine in a cigarette pack in the pocket. **See id.** at 1008. This Court held that the evidence was insufficient to support the appellant's constructive possession of the drugs where no drugs or cash were found in the appellant's physical possession, and there was no evidence discovered linking the appellant to the apartment, such as mail or receipts. **Id.** In support of its decision, this Court further noted, *inter alia*, no identification was found on the jacket containing the drugs; there was no evidence of a prior drug deal involving the appellant; and the area searched was not in close proximity to the appellant's residence. **Id.** Although the appellant possessed a key to the apartment, this Court explained that the appellant's mere presence at the scene and possession of a key to the apartment were not enough to establish the appellant's constructive possession of the drugs. **Id.**

Unlike the sparse evidence in **Rodriguez** connecting the appellant to the drugs, here, the totality of the circumstances established Appellant's constructive possession of the cocaine. Specifically, the evidence established

that Appellant had participated in two drug deliveries the day before[5] and had been observed leaving Apartment 351 with Ms. Harden. Further, police located Appellant in one specific bedroom of a multi-bedroom house, and police recovered Appellant's distinctive clothing worn during the drug deliveries, his wallet, his ID, and other documents belonging to Appellant in that bedroom. Neither Mr. Harris nor Ms. Lucas were in the bedroom, only Appellant and Ms. Harden. Detective Havens also testified that the amount and manner of packaging, as well as Appellant's possession of multiple cell phones, were consistent with the sale rather than personal use of drugs. Therefore, the Commonwealth presented sufficient evidence to establish that Appellant constructively possessed the cocaine found in the west bedroom of Apartment 351 with the intent to deliver it. **See Sebolka, supra**; **Parish, supra**; **Brown, supra**. Appellant's first issue merits no relief.

In Appellant's second issue, he argues that the evidence was insufficient to support his conviction for criminal use of a communication facility because the Commonwealth did not present sufficient evidence to establish that Appellant facilitated the first controlled buy using a cell phone. Appellant claims that the dealer and buyer set up the transaction, and Appellant only delivered the product. Appellant insists he made no phone calls and sent no

_____

[5] Although Appellant attempts to minimize his role in the drug deliveries and characterize himself as the "middleman," the jury convicted Appellant of delivery of a controlled substance in connection with each controlled buys. Appellant does not challenge the sufficiency of the evidence to sustain those convictions on appeal.

text messages to arrange a drug transaction. According to Appellant, he had no control over what was said or done during the chat, and he served no meaningful role in completing the drug deal. Appellant concludes the evidence was insufficient to sustain his conviction on these grounds, and this Court must grant relief. We disagree.

The Pennsylvania Crimes Code provides, in relevant part:

### § 7512. Criminal use of communication facility

**(a) Offense defined.--**A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

\* \* \*

**(c) Definition.--**As used in this section, the term **"communication facility"** means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512 (footnote omitted).

To support a conviction for criminal use of a communication facility under Section 7512, "the Commonwealth must prove beyond a reasonable doubt that: (1) [defendant] knowingly and intentionally used a communication facility; (2) [defendant] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." *Commonwealth v. Moss*, 852 A.2d 374, 382

(Pa.Super. 2004). "Facilitation" is "any use of a communication facility that makes easier the commission of the underlying felony." *Id.*

Under the statute, therefore, an offense is committed if, *inter alia*, a communication facility is used intentionally to cause or facilitate a felony, and the felony has occurred.

*Commonwealth v. Wunderlich*, 332 A.3d 112, 116 (Pa.Super. 2025).

Instantly, the trial court explained:

This charge relates to [Appellant's] use of a telephone to communicate with [Mr.] Harris and to enable communication between [Mr.] Harris and [the first CI] during the transaction. [The CI] was having communications via text message with [Mr.] Harris about purchasing cocaine in days leading up to transaction. The text messages were introduced as Commonwealth Exhibit 7. [The CI] used the same phone number to talk with [Mr.] Harris on the day of the transaction. When [the CI] entered the white Honda Civic, [Appellant] was on his cell phone with [Mr.] Harris. [Detective] Havens could hear them talking on the telephone in real time through the record[ing] device. The recording was played in its entirety for the jury. Since the transaction was arranged through [Mr.] Harris, he not only told the CI where to meet, but he had to have told [Appellant] where to meet [the CI] and given [Appellant] a description of [the CI] so that [Appellant] would meet with the right person and deliver the cocaine to her. A reasonable inference from [Appellant] being on the phone with [Mr.] Harris as [the CI] was entering the vehicle is that [Mr.] Harris communicated with [Appellant] about [the CI] and the drug transaction via [Appellant's] cellular telephone to facilitate the meeting with [the CI] to deliver the cocaine to her.

* * *

… The testimony at trial was that [the CI] had previously arranged to purchase cocaine from [Mr.] Harris for $150 but she did not have the cash to pay him, so he was holding a phone of [the CI's] to ensure that she would pay him for the cocaine that he had provided to her. [Mr.] Harris would not

- 14 -

sell more cocaine to [the CI] unless she paid him $150 dollars for the cocaine he previously had provided to her and an additional $150 for the cocaine he was going to provide her on May 3. This was the reason Detective Havens supplied [the CI] with $300 even though she was only buying $150 worth of cocaine on May 3. The conversation about [the CI's] phone enabled the completion of the prior drug transaction through payment of the owed $150 and facilitated the May 3 drug transaction because if she had not paid for the prior transaction, she would not have received more cocaine on May 3.

(Trial Court Opinion, 2/4/25, at 15-17) (internal citations and footnotes omitted).

We agree. Here, the evidence showed that Appellant used his cell phone, a communications device, to aid in the completion of a drug transaction between Mr. Harris and the CI. By using his cell phone to speak to Mr. Harris regarding the exchange of money and the CI's own cell phone, he made easier the commission of the underlying felony—namely, a drug transaction. Both Detective Havens and the CI testified that she had been given $300.00, $150.00 for the transaction that day, and $150.00 to complete the prior transaction. Appellant met the CI at a location predetermined by Mr. Harris and, once there, held his cell phone on speaker so that Mr. Harris could facilitate this transaction. This conversation was overheard and testified to by detectives. Therefore, the Commonwealth presented sufficient evidence to establish that Appellant knowingly and intentionally used his cell phone to aid in the sale of drugs, and the drug sale did in fact occur. *See Wunderlich, supra*. Appellant's second issue merits no relief.

In Appellant's final issue, he contends that the court abused its

discretion when it imposed consecutive sentences which resulted in an aggregate term of 5 to 20 years' incarceration. Appellant repeats that he was only a middleman in the transactions, and he claims that the court further failed to adequately consider prison adjustment factors.[6] Appellant concludes that the court abused its sentencing discretion by imposing an excessive sentence that did not properly take into consideration certain mitigating circumstances, and this Court should vacate his judgment of sentence. We disagree.

As presented, Appellant's issue challenges the discretionary aspects of sentencing. *See Commonwealth v. Clarke*, 70 A.3d 1281 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 481 (2014) (stating contention that court focused solely on serious nature of crime without adequately considering protection of public or defendant's rehabilitative needs concerns court's sentencing discretion); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

---

[6] We note that Appellant's brief does not explain what factors, if any, he believes the trial court failed to consider as "prison adjustment factors." At best, Appellant references his attendance in drug and alcohol treatment during a prior incarceration in the Centre County Jail.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Perzel*, 291 A.3d 38, 46 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 301 A.3d 426 (2023). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the

fundamental norms which underlie the sentencing process." ***Commonwealth v. Troell***, 290 A.3d 296, 299 (Pa.Super. 2023) (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010)).

Generally, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." ***Cruz-Centeno, supra*** at 545 (quoting ***Commonwealth v. Urrutia***, 653 A.2d 706, 710 (Pa.Super. 1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995)). Nevertheless, this Court has held that a claim that the court failed to consider factors set forth under Section 9721(b) and focused solely on the seriousness of the defendant's offense raised a substantial question. ***See Commonwealth v. Trimble***, 615 A.2d 48 (Pa.Super. 1992). ***See also Commonwealth v. Caldwell***, 117 A.3d 763 (Pa.Super. 2015), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (noting that this Court has held that excessive sentence claim, in conjunction with assertion that court failed to consider mitigating factors, raises substantial question).

Instantly, Appellant raised his sentencing issue in a timely filed post-sentence motion, filed a timely notice of appeal, and included in his appellate brief a Rule 2119(f) statement. Further, Appellant's claim arguably raises a substantial question for our review. ***See id.***; ***Trimble, supra***. Thus, we proceed to address the merits of Appellant's sentencing issue.

"[S]entencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion."

- 18 -

*Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa.Super 2022). "In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* at 527-28. Additionally, "long standing precedent … recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa.Super. 2005). A trial court does not abuse this discretion unless the sentence is "grossly disparate" to the conduct at issue, or "viscerally appear[s] as patently unreasonable." *Commonwealth v. Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa.Super. 2010).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior

criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Moreover, where the sentencing court had the benefit of a [pre-sentence investigation ("PSI") report], the law presumes the court was aware of and weighed relevant information regarding a defendant's character along with mitigating statutory factors. ***Commonwealth v. Tirado***, 870 A.2d 362, 366 n.6 (Pa.Super. 2005).

Instantly, the court stated on the record that it considered the PSI report, the sentencing guidelines, and all the evidence presented during the history of this case, including the evidence Appellant presented at the sentencing hearing. The court read into the record Appellant's history, including his personal history regarding his six children and support of his family, prior record, several write-ups he had received at the county prison, his lack of enrollment in programs, and his active state parole detainer. In fashioning its sentence, the court noted:

> At least one of the factors that jumps out to me in terms of sentencing is the fact that he was on supervision for, essentially, the same type of offense when he was arrested for these and now he's convicted of these. … So while I respect the argument of Counsel on Count 2, I am going to run that consecutive[.] I'm not saying I think the price of poker goes up as a saying, but I think that when the deterrent effect of state incarceration doesn't seem to be dissuading someone from continuing to commit offenses for which he appears to have his adult record is only delivery of a controlled substance, I think it means that his next sentence, while he's on supervision, needs to be longer.

(N.T. Sentencing, 10/1/24, at 10-11). In its opinion, the court elaborated that the individual sentences were all within the standard range of the guidelines.

Further, the court explained that Appellant had failed to adjust in prison and, in fact, had received three write-ups for disruptive behavior during his time in county prison, had failed to participate in programming, and had a state parole detainer. The court also noted that after each of Appellant's prior convictions, he was "back dealing drugs within months of his release from prison." (Trial Court Opinion, 2/4/25, at 32-33).

The record belies Appellant's claim that the court failed to appropriately consider his prison adjustment or any other factor. The court's on-the-record explanation of its sentence demonstrates that it had the benefit of a PSI report and carefully considered and weighed the relevant sentencing factors. *See* 42 Pa.C.S.A. § 9721(b); ***Tirado, supra***; ***Griffin, supra***. The court ultimately determined that Appellant's repeat offenses of the same nature, as well as his failure to adjust in prison, required a consecutive sentence. ***See id.*** On appeal, Appellant essentially asks this Court to reweigh the sentencing factors in his favor. We decline to do so. ***See Schroat, supra***. We discern no abuse of discretion in the court's imposition of sentence. ***See id.*** Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/15/2025</u>